# FOR PUBLICATION

1

2

3

**FILED & ENTERED**

**AUG 29 2013**

**CLERK U.S. BANKRUPTCY COURT**
**Central District of California**
**BY gae        DEPUTY CLERK**

4

5

6

7

8        **UNITED STATES BANKRUPTCY COURT**

9        **CENTRAL DISTRICT OF CALIFORNIA**

10        **LOS ANGELES DIVISION**

| | |
|---|---|
| In re:<br><br>**JEFFREY SCOTT TRAWICK and STEPHANIE F. BERRY**,<br><br>                                Debtors. | Case No. 2:12-bk-12581-RK<br><br>Chapter 7<br><br>Adv. No. 2:12-ap-02039-RK |
| **RICHARD K. DIAMOND**,<br>Chapter 7 Trustee,<br><br>                                Plaintiff,<br><br>   vs.<br><br>**JEFFREY SCOTT TRAWICK and STEPHANIE F. BERRY,** individually, and in her capacity as trustee of the Robert P. Berry and Roberta J. Berry Revocable Trust,<br><br>                                Defendants. | **MEMORANDUM DECISION ON CROSS-MOTIONS FOR SUMMARY JUDGMENT IN ADVERSARY PROCEEDING AND ON TRUSTEE'S OBJECTION TO DEBTORS' CLAIM OF EXEMPTION IN MAIN BANKRUPTCY CASE** |

11

12

13

14

15

16

17

18

19

20

21

22

23

24        The disputes between the parties, Stephanie F. Berry ("Berry") and Jeffrey Scott

25   Trawick ("Debtors"), and Richard K. Diamond, the Chapter 7 Trustee ("Trustee"), arising

26   from Trustee's adversary proceeding seeking turnover of certain assets of Debtors

27   claimed as exempt and from the contested matters of Trustee's objections in the main

28   bankruptcy case to Debtors' amended claims of exemption for these assets on cross-

1    motions for summary judgment came on for hearing before the undersigned United

2    States Bankruptcy Judge on July 2 and 16, 2013.  Kevin D. Meek, of the law firm of

3    Danning, Gill, Diamond & Kollitz, L.L.P., appeared for Trustee.  Mark T. Young, of the law

4    firm of Donohoe & Young, appeared for Debtors.

5         Having considered the moving and opposing papers and heard the arguments of

6    the parties, the court now issues this memorandum decision.

7                             **FACTUAL BACKGROUND**

8         The facts pertaining to these disputed matters are largely undisputed.

9         On January 24, 2012, Debtors, who are husband and wife, filed a joint voluntary

10    petition for relief under Chapter 7 of the Bankruptcy Code, 11 U.S.C.  Richard K.

11    Diamond was appointed as the Chapter 7 Trustee for the case.

12         On July 3, 2010, Berry's parents,  Robert P. Berry and Roberta J. Berry, executed

13    a trust instrument ("Trust Instrument") creating a trust called the "Robert P. Berry, Sr. and

14    Roberta J. Berry 2010 Trust" (the "Trust") in which they were both the settlors and initial

15    trustees pursuant to the laws of the State of North Carolina.  *See Trust Instrument*

16    (Trustee's Motion for Summary Judgment ("Trustee's MSJ") [AP Docket No. 9]), Exhibit

17    1, Article I.  The Trust named Berry and her brothers, Robert P. Berry, Jr., and Ronald J.

18    Berry, as trust beneficiaries whom upon the death of their parents are required to receive

19    trust assets in "shares of equal value as may be practicable."  *Trust Instrument*, Article

20    VI(A).  The total value of assets of the Trust is $560,712.59.  *Declaration of Richard*

21    *Diamond, dated March 12, 2013* ("*Diamond Declaration*") (Trustee's MSJ at 20), ¶ 5.

22         Berry and her brothers were also named by their mother as beneficiaries of an

23    individual retirement account that was maintained at America Financial Life and Annuity

24    Insurance Co. under policy number R0018033 ("Inherited IRA").  *Declaration of*

25    *Stephanie Berry, dated April 13, 2012* ("*Berry Declaration*") (Trustee's MSJ, Exhibit 2),

26    ¶ 4.  The total value of the Inherited IRA is $183,000.  *Diamond Declaration*, ¶ 5.

27         Both of Berry's parents died in 2011, and upon their death, equal beneficial

28    interests in the Trust and Inherited IRA passed to Berry and her brothers.  *Berry*

*Declaration*, ¶¶ 2 and 4.  Berry also became the Trustee of the Trust and had "all duties and powers, including any of a discretionary nature, herein granted to the original Trustees."  *Trust Instrument*, Article XII; *Declaration of Stephanie Berry,* ¶ 2.

When Debtors filed their bankruptcy petition, they did not list Berry's beneficial interests in the Trust or the Inherited IRA on Schedules B and C of their original bankruptcy schedules, though they referred to the Trust as "property held for another person" on their original statement of financial affairs.  *Schedules B and C, filed January 24, 2012* (Trustee's MSJ, Exhibit 3); *Statement of Financial Affairs (excerpt), filed January 24, 2012* (Debtors' Opposition to Trustee's MSJ, Exhibit 2).

On August 16, 2012, Trustee initiated an adversary proceeding by filing a complaint seeking (1) declaratory relief that Berry's interest in the Trust constituted property of the bankruptcy estate under 11 U.S.C. §541(a); and (2) a judgment directing the debtors to turn over Berry's interest in the Trust to the Trustee, or the cash value thereof.  Trustee's Complaint did not refer to Berry's interest in the Inherited IRA as Debtors had not then disclosed that interest on their schedules.

On March 16, 2013, Trustee filed a motion for summary judgment in the adversary proceeding against Debtors seeking declaratory relief that Berry's interests in the Trust and Inherited IRA are property of the bankruptcy estate and are not exempt and turnover of these interests to Trustee should be ordered (AP Docket No. 9).

On April 2, 2013, Debtors filed an opposition to Trustee's summary judgment motion.  Debtors' Opposition to Trustee's MSJ, AP Docket No. 13.  In their opposition to Trustee's summary judgment motion, Debtors contended that Berry's interest in the Trust is an exempt asset under North Carolina law because the Trust contains a spendthrift provision and contains other provisions treating the interest as exempt as a discretionary trust interest or a protective trust interest.  As to Berry's interest in the Inherited IRA, Debtors contended that Trustee's Motion should be denied on procedural grounds because the adversary complaint did not include any claim as to Berry's interest in the

1  Inherited IRA and on substantive grounds that the Inherited IRA is exempt pursuant to 11

2  U.S.C. § 522(b)(3)(C).

3       Also on April 2, 2013, Debtors filed amended Schedules B and C (BK Docket No.

4  32).  The amended Schedule B listed Berry's interests in the Trust and Inherited IRA as

5  assets, but her interest in the Trust was listed as non-property of the bankruptcy estate.

6  The amended Schedule C claimed Berry's interest in the Trust as exempt pursuant to

7  California Code of Civil Procedure, § 703.140(b)(5), and Berry's interest in the Inherited

8  IRA as exempt pursuant to 11 U.S.C. § 502(b)(3)(C) and California Code of Civil

9  Procedure, § 703.140(b)(10)(E).

10      On April 10, 2013, Debtors filed a cross-motion for summary judgment (AP Docket

11 No. 19).  In support of their motion, Debtors made the same arguments in their opposition

12 to Trustee's summary judgment motion.  On May 7, 2013, Trustee filed an opposition to

13 Debtors' cross-motion for summary judgment (AP Docket No. 28) as well as evidentiary

14 objections to certain declarations filed by Debtors in support of their cross-motion for

15 summary judgment (AP Docket Nos. 24, 25, and 27).

16      On May 1 and 2, 2013, Trustee filed objections to the exemptions claimed by

17 Debtors in their amended schedules with respect to Berry's interests in the Trust (BK

18 Docket No. 33) and Inherited IRA (BK Docket No. 37).  On June 18, 2013, Debtors filed

19 oppositions to Trustee's objections to the amended exemptions (BK Docket Nos. 48-49).

20 On June 25, 2013, Trustee filed replies (BK Docket Nos. 50-51) and evidentiary

21 objections to certain declarations filed in support of Debtors' oppositions (BK Docket Nos.

22 52-56).  On May 28, 2013, Debtors filed a reply to Trustee's motion for summary

23 judgment (AP Docket No. 35).

24      On July 16, 2013, a hearing was held on the parties' cross-motions for summary

25 judgment as well as the Trustee's objections to the exemptions claimed in the Trust and

26 Inherited IRA.  The court granted leave for the parties to submit further briefing on a

27 recently decided case, *In re Bauer*, 2013 WL 261835 (Bankr. D. S.C., June 12, 2013),

28

4

1 and took the cross-motions for summary judgment and the Trustee's objections to the

2 amended exemptions under submission.

3       On July 30, 2013, Trustee filed a supplemental brief on the applicability of *Bauer* to

4 this case (BK Docket No. 57).  On August 13, 2013, Debtors filed a response to the

5 supplemental brief (BK Docket No. 58) to address the arguments made by Trustee in the

6 supplemental brief and to notify the court that the Seventh Circuit's decision in *In re*

7 *Clark*, 714 F.3d 559 (7th Cir. 2013) is still subject to review by the United States Supreme

8 Court after the deadline to file a petition for *writ of certiorari* was extended to September

9 18, 2013 by Justice Kagan.  *See Declaration of Denis P. Bartell, dated August 13, 2013*,

10 ¶ 4 (BK Docket No. 58).  Debtors requested that the court defer its decision on the

11 amended claim of exemption in the Inherited IRA until the Supreme Court ruled on the

12 petition for review in *Clark,* which request the court now denies.

13 **ANALYSIS**

14       By the adversary proceeding, Trustee seeks the turnover of Berry's interests in the

15 Trust and the Inherited IRA, and by his objections to the amended exemptions, Trustee

16 seeks denial of Debtors' amended claims of exemption in Berry's interest in the Inherited

17 IRA and Trust.  In defending Trustee's adversary proceeding and opposing his objections

18 to the amended claims of exemption, Debtors seek determinations that turnover of these

19 assets should not be ordered and that Trustee's objections to the amended claims of

20 exemption should be overruled.

21       The court has jurisdiction over Trustee's adversary proceeding pursuant to 28

22 U.S.C. § 1334, and the claims for relief alleged in the adversary complaint arise under the

23 Bankruptcy Code, 11 U.S.C.  *See* Adversary Complaint ("Complaint"), ¶ 1; Answer, ¶ 1.

24 The adversary proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (E)

25 and (O).  *See* Complaint, ¶ 2; Answer, ¶ 1.  Venue properly lies in this judicial district

26 pursuant to 28 U.S.C. § 1409(a).  *See* Complaint, ¶ 3; Answer, ¶ 1.

27       The court also has jurisdiction over the contested matters of Trustee's objections

28 to Debtors' amended claims of exemption pursuant to 28 U.S.C. § 1334, and the claims

for relief alleged in the objections arise under the Bankruptcy Code, 11 U.S.C., and are related to Debtors' bankruptcy case, No. 2:12-bk-12581 RK.  *See* Trustee's Objections to Amended Claims of Exemption to Trust Interests and Inherited IRA; Debtors' Oppositions thereto.  The contested matters are core proceedings pursuant to 28 U.S.C. § 157(b)(2)(A), (E) and (O).  Venue properly lies in this judicial district pursuant to 28 U.S.C. § 1409(a).

On or about June 4, 2013, Trustee filed objections to the declarations of Berry and Debtors' counsel, Mark T. Young, filed in support of Debtors' opposition to Trustee's summary judgment motion.  The court now sustains Trustee's objections to Berry's declaration, nos. 1 and 2 and his objections to Young's declaration, nos. 1-5.

On or about June 25, 2013, Trustee filed objections to the declarations of Berry and Debtors' bankruptcy counsel, Mark T. Young, filed in support of Debtors' opposition to Trustee's motion for an order disallowing Debtors' amended claim for exemption in the Trust.  The court now sustains Trustee's objections to Berry's declaration, nos. 1-3 and his objections to Young's declaration, nos. 1-5.

On or about June 25, 2013, Trustee filed objections to the declarations of Berry, Debtors' bankruptcy  counsel, Mark T. Young, and Dennis P. Bartell, counsel for debtors in *In re Clark,* filed in support of Debtors' opposition to Trustee's motion for an order disallowing Debtors' amended claim for exemption in the Inherited IRA.  The court now sustains Trustee's objections to Berry's declaration, nos. 1-3, his objections to Young's declaration, nos. 1-5, and his objection to Bartell's declaration, no. 1.

A.     Berry's Interest in the Trust

Section 541(c)(2) of the Bankruptcy Code, 11 U.S.C., provides: "A restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable nonbankruptcy law is enforceable in a case under this title."  *See also, Patterson v. Shumate,* 504 U.S. 753, 757-758 (1992) (construing 11 U.S.C. § 541(c)(2)). As the Supreme Court noted in *Patterson,* "[t]he natural reading of this provision entitles a debtor to exclude from property of the estate any interest in a plan or trust that contains a

1  transfer restriction enforceable under any relevant nonbankruptcy law." 504 U.S. at 758.

2  As further noted in *Patterson,* "[t]he text contains no limitation on 'applicable

3  nonbankruptcy law' relating to the source of the law." *Id.*

4          As expressly provided in the Trust Instrument, the Trust is governed by North

5  Carolina law. *Trust Instrument*, Article XV ("This trust has been accepted by the Trustees

6  in North Carolina, and all questions pertaining to the validity and construction of this

7  instrument and to the administration of the trust shall be determined in accordance with

8  the laws of that State."). The settlors and original trustees of the Trust, Berry's parents,

9  indicated in the preamble of the Trust Instrument that they were residents of Mecklenburg

10 County, North Carolina, and subscribed to the Trust Instrument before a notary public in

11 that state and county. *Trust Instrument* at 1 and 15. Accordingly, the court will analyze

12 North Carolina law to determine the issue whether Debtors may exclude from the

13 bankruptcy estate Berry's beneficial interest in the Trust, which Debtors assert contains a

14 transfer restriction that may be enforceable under any relevant nonbankruptcy law

15 pursuant to 11 U.S.C. § 541(c)(2).

16         Prior to 2006, North Carolina did not recognize spendthrift trusts in any way.

17 However, in January 2006, North Carolina revised its statutory law of trusts by adopting

18 much of the Uniform Trust Code as part of the North Carolina General Statutes ("NCGS")

19 § 36C-1-101, *et seq.* Current North Carolina statutory law recognizes the enforceability

20 of spendthrift trusts. NCGS § 36C-5-501 provides:

21          (a) Except as provided in subsection (b) of this section, the court may
22              authorize a creditor or assignee of the beneficiary to reach the
                beneficiary's interest by attachment of present or future distributions to
23              or for the benefit of the beneficiary or other means. The court may limit
                the award to that relief as is appropriate under the circumstances.
24
25          (b) Subsection (a) of this section shall not apply, and a trustee shall have
                no liability to any creditor of a beneficiary for any distributions made to
26              or for the benefit of the beneficiary, to the extent that a beneficiary's
                interest is protected or restricted by any of the following:
27
                    (1) A spendthrift provision.
28

(2) A discretionary trust interest as defined in G.S. 36C-5-504(a)(2).

(3) A protective trust interest as described in G.S. 36C-5-508.

NCGS § 36C-5-501 (emphasis added).

Thus, under North Carolina law, a trust may protect or restrict a beneficiary's interest from the beneficiary's creditors by <u>any</u> of (1) a spendthrift provision; (2) a discretionary trust interest; or (3) a protective trust interest.

1. <u>Spendthrift Provision</u>

NCGS § 36C-5-502 provides:

(a) A spendthrift provision is valid only if it restrains both voluntary and involuntary transfer of a beneficiary's interest.

(b) A term of a trust providing that the interest of a beneficiary is held subject to a "spendthrift trust", or words of similar import, is sufficient to restrain both voluntary and involuntary transfer of the beneficiary's interest.

(c) A beneficiary may not transfer an interest in a trust in violation of a valid spendthrift provision and, except as otherwise provided in this Article, a creditor or assignee of the beneficiary may not reach the interest or a distribution by the trustee before its receipt by the beneficiary.

NCGS § 36C-5-502.

The Official Comment to NGCS § 36C-5-502 provides, in pertinent part:

For a spendthrift provision to be effective under this Code, it must prohibit both the voluntary and involuntary transfer of the beneficiary's interest, that is, a settlor may not allow a beneficiary to assign while prohibiting a beneficiary's creditor from collecting, and vice versa. *See* Restatement (Third) of Trusts Section 58 cmt. b (Tentative Draft No. 2, approved 1999). *See also* Restatement (Second) of Trusts Section 152(2) (1959). A spendthrift provision valid under this Code will also be recognized as valid in a federal bankruptcy proceeding. See 11 U.S.C. Section 541(c)(2).

Subsection (b), which is derived from Texas Property Code, Section 112.035(b), allows a settlor to provide for maximum spendthrift protection simply by stating in a trust instrument that all interests are held subject to a "spendthrift trust" or words of similar effect.

*Id.*, Official Comment (emphasis added).

Article IX(C) of the Trust Instrument contains the type of "maximum spendthrift provision" referred to in the Official Comment, stating as follows:

> C. Protective Trust Provisions.  No beneficiary of any trust created under this instrument shall have the power to anticipate, encumber, or transfer any interest in the trust estate in any manner.  <u>No part of any trust estate shall be liable for or charged with any debts, contracts, liabilities, or torts of a beneficiary or be subject to seizure or other process by any creditor of a beneficiary.</u>  Notwithstanding the foregoing, if any beneficiary of any trust created under this instrument (except a surviving Grantor to the extent he or she is a beneficiary of any such trust whose value absent this provision would be allowable as a marital deduction in the estate tax proceeding relating to Grantor's death) shall attempt to anticipate, pledge, assign, sell, transfer, alienate or encumber his or her interest in the income or principal of such trust; or <u>if any creditor or claimant shall attempt to subject such interest to the payment of any debt, liability or obligation of any such beneficiary; or if such beneficiary shall be subject to bankruptcy, insolvency or receivership proceedings, thereupon any absolute right of such beneficiary to income or principal from such trust shall cease.</u>  Thereafter, and until such time as the Trustee is able to distribute such property to such beneficiary, the Trustee may accumulate trust income, if any, to which such beneficiary would otherwise be entitled or the Trustee may distribute the same to the other beneficiaries, if any, of the trust entitled to receive such income and shall be held harmless in making such discretionary distributions.  In no event shall the Trustee be required or compelled to pay any income or principal to or for the benefit of such beneficiary, and, upon the death of such beneficiary, any property held or accumulated in his or her trust shall be distributed in accordance with the provisions provided for principal dispositions at his or her death.

*Trust Instrument*, Article IX(C) (emphasis added).

Thus, the Trust Instrument contains a valid spendthrift provision pursuant to NCGS § 36C-5-502 as the express language of the Trust Instrument prohibits the voluntary and involuntary transfer of a beneficiary's interest to a payment of any debt of the beneficiary.

In his summary judgment motion, Trustee argues that the spendthrift provision was ineffective under applicable state trust law and thus the restrictions on transfer of a debtor's beneficial interest in a trust are not enforceable pursuant to 11 U.S.C. § 541(c)(2) because under the Trust Instrument, Debtors have the ability to exert dominion and control over the Trust.  However, in support of this argument, Trustee does not cite any case authority interpreting North Carolina law holding that such a spendthrift provision would be ineffective.  Rather, Trustee cites case law interpreting the trust law of other states that has so held.  Trustee's MSJ at 12-16, *citing inter alia, In re Baldwin,* 142

1    B.R. 210 (Bankr. S.D. Ohio 1992) (Ohio law); *In re Lawrence,* 251 B.R. 630 (S.D. Fla.

2    2000) (Florida law); *In re Witwer,* 148 B.R. 930 (Bankr. C.D. Cal. 1992) (Wilson, J.); *In re*

3    *Rolfe,* 34 B.R. 159 (Bankr. N.D. Ill. 1983) (unspecified state law) and *In re McCullough,*

4    259 B.R. 509 (Bankr. D.R.I. 2001) (Rhode Island law).  The court is not so sure that

5    Trustee's reliance on case law interpreting the law of other states to interpret North

6    Carolina trust law is a good idea or appropriate.  The court understands why Trustee is

7    relying on case law of other jurisdictions as acknowledged by the court in *McCullough*

8    finding itself in a similar predicament.  *In re McCullough,* 259 B.R. at 517 ("There appear

9    to be no Rhode Island cases which address whether the Debtor's exercise of dominion

10   and control over the Trust invalidates the spendthrift provisions, so we will look to the

11   case law of other jurisdictions.").  There does not appear to be any North Carolina cases

12   directly relevant to the issue before the court.

13         Rather than parsing the case law first, the court should rely upon the usual method

14   of statutory interpretation based on the plain language of the statute.  *United States v.*

15   *Ron Pair Enterprises, Inc.,* 489 U.S.235, 241-242 (1989); *see also, Patterson v.*

16   *Shumate,* 504 U.S. at 757 ("In our view, the plain language of the Bankruptcy Code and

17   ERISA is our determinant.") (citation omitted).  In *Ron Pair,* the Supreme Court stated:

18   "The task of resolving the dispute over the meaning of [a statute] begins where all such

19   inquiries must begin: with the language of the statute itself."  *Id.* at 241 (citation omitted).

20   The Supreme Court in *Ron Pair* in interpreting the subject statute in that case, Section

21   506(b) of the Bankruptcy Code, 11 U.S.C., held: "In this case it is also where the inquiry

22   should end, for where, as here, the statute's language is plain, the sole function of the

23   courts is to enforce it according to its terms."  *Id.* (citation and internal quotation marks

24   omitted); *accord, Patterson v. Shumate,* 504 U.S. at 759.  As discussed above, the

25   express statutory language of the North Carolina General Statutes recognizes the validity

26   of a spendthrift provision which complies with the terms of that language.

27         Trustee's position is further weakened by the express language of NCGS § 36C-5-

28   503, which excepts the enforceability of a spendthrift provision from child support

payments.  *See* NCGS § 36C-5-503 (entitled "Exceptions to spendthrift provision").  This

provision states:

> (a) As used in this section, the term "child" includes any person for whom an order or judgment for child support has been entered in this or another state.
>
> (b) Even if a trust contains a spendthrift provision, or if the beneficiary's interest is a discretionary interest as defined in G.S. 36-C-5-504(a)(2) or a protective trust interest as defined in G.S. 36C-5-508, a beneficiary's child who has a judgment or court order against the beneficiary for support or maintenance may obtain from a court an order attaching present or future distributions to or for the benefit of the beneficiary.  The court may limit the award to relief that is appropriate under the circumstances.

NCGS § 36C-5-503.  There is no indication within this statute that a spendthrift provision

is unenforceable simply due to the fact that a beneficiary also serves as a trustee.  The

failure of the North Carolina legislature to include such an exception in NCGS § 36C-5-

503 indicates that the legislature did not intend to restrict the enforceability of a

spendthrift provision in that regard.[1]  The Official Comment to NCGS § 36C-5-502

focuses on the settlor's intent rather than on a beneficiary's dominion or control over the

Trust:  "Under this section, a settlor has the power to restrain the transfer of a

beneficiary's interest, regardless of whether the beneficiary has an interest in income, in

principal, or in both."  NCGS § 36C-5-503, *Official Comment*.

---

[1] The primary concern with creditor protection regarding spendthrift trusts is with self-settled trusts, but some jurisdictions will not recognize a spendthrift trust, even if the trust is not directly or indirectly self-settled, where a beneficiary has or exercises too much control over trust property.  *See* Spero, *Asset Protection: Legal Planning, Strategies and Forms*, ¶ 6.11 (Loss of Protection Because of Beneficiary's Control) (2011), *citing inter alia, Waterbury v. Munn,* 159 Fla. 754, 32 So.d 603, 606 (1947).  Where, as here, the concern is lessened because the trust is not self-settled, and while one of the debtors is the sole trustee, she is only one of several beneficiaries.  *Id.* (suggesting that dominion and control is less of concern in situations involving sole beneficiary and multiple trustee or sole trustee and multiple beneficiaries).  As discussed herein, North Carolina limits the enforceability of spendthrift trust provisions with respect to self-settled trusts and child support recipients, but not the situation here involving a sole trustee of a trust with multiple beneficiaries, including the sole trustee.  NCGS §§ 36C-5-503 and 36C-5-505.

1   The court further notes that there is also an exception to the enforceability of a

2   spendthrift provision in a trust in which the settlor retains a beneficial interest in NCGS

3   § 36C-5-505 (entitled "Creditor's claim against settlor").  This provision does not apply to

4   the case at bar because the Trust is not a self-settled trust, but it also shows the extent of

5   the restrictions to the enforceability of a spendthrift provision expressly imposed by the

6   North Carolina legislature.

7   Trustee urges that the court follow and apply to the Trust the four-factor common

8   law test in *Baldwin* to determine whether a trust qualifies as a spendthrift trust: (1) the

9   settlor of the trust is also the beneficiary of the trust; (2) the beneficiary has dominion and

10  control of the trust; (3) the beneficiary may revoke the trust; or (4) the beneficiary has

11  powers in the trust.  Trustee's MSJ at 12-13, *citing, In re Baldwin,* 142 B.R. at 214, *citing*

12  *inter alia, In re Swanson,* 873 F.2d 1121, 1124 (8th Cir. 1989) (interpreting Minnesota

13  trust law, but also relying upon federal general common law).[2]  The court declines this

14  invitation because this would be inconsistent with the court's obligation to interpret the

15  plain language of the applicable statutes, the North Carolina General Statutes, and would

16  also be inconsistent with the admonition that there is no general federal common law as

17  indicated in *Erie Railroad Co. v. Tompkins,* 304 U.S. 64, 78 (1938) since in this instance,

18  the court is tasked with determining applicable nonbankruptcy law, which is the law of the

19  state governing the spendthrift provision of the subject trust.  11 U.S.C. § 541(c)(2); *see*

20  *also, Patterson v. Shumate,* 504 U.S. at 757-766.

21  For the foregoing reasons, the court concludes that Berry's interest in the Trust is

22  protected by a valid spendthrift provision pursuant to NCGS § 36C-5-502 and is not liable

23

---

24  [2] Trustee argues that the court should apply the four-factor common law test in *Baldwin* based on the policy
    of the Bankruptcy Code to enlarge the bankruptcy estate to provide creditors with distributions to which

25  they are entitled and that 11 U.S.C. § 541( c)(2) "must be narrowly construed to avoid impinging upon the
    policies sought to be furthered by the Code."  Trustee's MSJ at 13, *quoting, In re Baldwin,* 142 B.R. at 214.

26  The Supreme Court in *Patterson v. Shumate* rejected a similar policy argument to narrowly construe an
    interpretation of § 541(c)(2) to limit the phrase "applicable nonbankruptcy law" to state law only and not to

27  include a federal nonbankruptcy statute, such as ERISA, holding that the plain language of the statute
    governs even if such policy considerations are relevant.  504 U.S. at 763-764.

28

12

to creditors pursuant to NCGS § 36C-5-501(b)(1) and that the spendthrift provision in the

Trust may be enforced under applicable nonbankruptcy law pursuant to 11 U.S.C.

§ 541(c)(2).

2. <u>Discretionary Trust Interest</u>

NCGS § 36C-5-504(a) defines a "discretionary trust interest" as follows:

> (2) "Discretionary trust interest" means an interest in a trust that is subject to the trustee's discretion, whether or not the discretion is expressed in the form of a standard of distribution. A discretionary trust interest shall include an interest in any one or any combination of the following:

>> a. A trust in which the amount to be received by the beneficiary, including whether or not the beneficiary, or a class of beneficiaries, is to receive anything at all, is within the discretion of the trustee.

>> b. A trust in which the trustee has no duty to pay or distribute any particular amount to the beneficiary, but has only a duty to pay or distribute to the beneficiary, or apply on behalf of the beneficiary, those sums that the trustee, in the trustee's discretion, determines are appropriate for the support, education, or maintenance of the beneficiary.

NCGS § 36C-5-504(a).

Under this provision, if a trustee also holds a beneficiary interest under a

discretionary trust, the trustee's beneficial interest is also protected "if the trustee's

discretion to make distributions for the trustee's own benefit is limited by an <u>ascertainable</u>

<u>standard</u>."  NCGS § 36C-5-504(f) (emphasis added).  An "ascertainable standard" is

defined as "[a] standard relating to an <u>individual's health, education, support, or</u>

<u>maintenance</u> within the meaning of section 2041(b)(1)(A) or 2514(c)(1) of the Internal

Revenue Code."  NCGS § 36C-1-103(2) (emphasis added).[3]  Thus, put differently,"[t]he

beneficiary-trustee is protected from creditor claims to the extent the beneficiary-trustee's

discretion is protected by an ascertainable standard as defined in the relevant Internal

Revenue Code sections."  NCGS § 36C-5-504, *Official Comment* (2004 Amendment).

---

[3] The Internal Revenue Code also defines "ascertainable standard" in terms of the beneficiary's "health, education, support, or maintenance." *See* IRC §§ 2041(b)(1) and 2514(c)(1), 26 U.S.C.

1    The court determines that the Trust is a discretionary trust because it does not

2  contain any ascertainable standard relating to health, education, support or maintenance

3  that would limit Berry's power to make distributions to herself.  *See* NCGS § 36C-5-

4  504(a)(2)a.  Article IX of the Trust Instrument contains a list of provisions relating to the

5  discretion of the Trustee, but states that the provisions "are not intended to limit or direct

6  the exercise of such discretion in any way."  *Trust Instrument*, Article IX(A).  Therefore,

7  the court concludes that because Berry's discretion as the successor trustee of the Trust

8  to make distributions for her own benefit is not limited by an ascertainable standard, her

9  beneficial interest in the Trust is a discretionary interest not protected from her creditors

10  pursuant to NCGS § 36C-5-504 or § 36C-5-501(b)(2).

11        3.  Protective Trust Interest

12        NCGS § 36C-5-508 defines a "protective trust interest" as follows:

13  Except with respect to an interest retained by the settlor, a "protective trust
    interest" means an interest in a trust in which the terms of the trust provide
14  that the interest terminates or becomes discretionary if:

15            (1) The beneficiary alienates or attempts to alienate that interest; or

16            (2) Any creditor attempts to reach the beneficiary's interest by
17                attachment, levy, or otherwise; or

18            (3) The beneficiary becomes insolvent or bankrupt.

19

20  NCGS § 36C-5-508.

21        The court determines that the Trust is a protective trust because under the Trust

22  Instrument, it terminates an interest if a beneficiary (1) attempts to subject his/her

23  interests to the payment of his/her debt (i.e., alienate the interest to a creditor); or (2) files

24  for bankruptcy or otherwise becomes subject to insolvency or receivership proceedings.

25  Article IX of the Trust Instrument provides a beneficiary's interest in the Trust terminates

26  or becomes discretionary if the beneficiary "attempt[s] to subject such interest to the

27  payment of any debt, liability or obligation of any such beneficiary" or "if such beneficiary

28

1  shall be subject to bankruptcy, insolvency or receivership proceedings." *Trust*

2  *Instrument*, Article IX(C).

3    Therefore, the court concludes that to the extent that Berry's interest in the Trust

4  does not terminate, it is also a discretionary interest pursuant to NCGS § 36C-5-508, and

5  further concludes that because Berry's discretion as the successor trustee of the Trust to

6  make distributions for her own benefit is not limited by an ascertainable standard, her

7  beneficial interest in the Trust is a discretionary interest not protected from her creditors

8  pursuant to NCGS § 36C-5-504 or § 36C-5-501(b)(2).

9    4.  Debtors' Claimed Exemption Pursuant to California Code of Civil Procedure,
10    § 703.140(b)(5)

11    Based on the foregoing, the court determines that Berry's interest in the Trust is

12  not property of the Debtors' bankruptcy estate because the Trust contains a valid

13  spendthrift provision pursuant to NCGS § 36C-5-502 and is not liable to creditors

14  pursuant to NCGS § 36C-5-501(b)(1).  Therefore, because Berry's interest in the Trust is

15  not property of the bankruptcy estate, Debtors' claimed exemption in the interest in the

16  Trust, and Trustee's objection thereto, are moot.  Moreover, because Berry's interest in

17  the Trust is not property of the estate, it is not subject to turnover as demanded by

18  Trustee, and thus, as to Berry's interest in the Trust, Trustee's motion for summary

19  judgment should be denied, Debtors' cross-motion for summary judgment should be

20  granted, and Trustee's adversary complaint should be denied and dismissed with

21  prejudice.

22  **B.    Berry's Interest in the Inherited IRA**

23    On their Amended Schedule C, Debtors claimed Berry's interest in the Inherited

24  IRA exempt pursuant to 11 USC § 522(b)(3)(C) and California Code of Civil Procedure,

25  § 703.140(b)(10)(E).  In the adversary proceeding, Trustee has moved for summary

26  judgment with respect to Debtors' claimed exemptions in the Inherited IRA.  However, in

27  the complaint, Trustee did not plead a claim for the turnover of the funds in the Inherited

28  IRA.  *See* Complaint, ¶¶ 10-16.

1    In this circuit, a party cannot move for summary judgment if it has not given notice

2  of the claim in the complaint.  *Wasco Products, Inc. v. Southwall Technologies, Inc.,* 435

3  F.3d 989, 992 (9th Cir. 2006) ("[T]he necessary factual averments are required with

4  respect to each material element of the underlying legal theory. . . .  Simply put, summary

5  judgment is not a procedural second chance to flesh out inadequate pleadings.")

6  (quotation marks and citation omitted); *Shubin v. Midland Credit Mgmt., Inc.*, 2008 WL

7  5042849 at *6 (C.D. Cal., Nov. 24, 2008) (holding that a plaintiff could not raise new

8  allegations not pled in the complaint to oppose a defendant's motion for summary

9  judgment).

10    In the case at bar, Debtors did not list Berry's interest in the Inherited IRA as an

11  asset on their bankruptcy schedules until after Trustee filed the adversary complaint.  The

12  Trustee cannot move for summary judgment with respect to Berry's interest in the

13  Inherited IRA until such allegations are pled in an amended complaint.  Thus, Trustee's

14  motion for summary judgment in the adversary proceeding with respect to the Inherited

15  IRA is denied on procedural grounds.  Nevertheless, Debtors have filed a cross-motion

16  for summary judgment on these issues.  Moreover, the parties have raised the issue of

17  the validity of the claim of exemption in the Inherited IRA by Trustee's Objection to

18  Debtors' Amended Claim of Exemption in this asset.  Therefore, the court may address

19  the amended claim of exemption for Berry's interest in the Inherited IRA under 11 U.S.C.

20  § 522(b)(3)(C) and California Code of Civil Procedure § 703.140(b)(10)(E).

21    1.  <u>11 U.S.C. § 522(b)</u>

22    California has opted out of the federal exemption scheme provided in the

23  Bankruptcy Code.  11 U.S.C. §§ 522(b)(1), (2) and (3) and (d); *Sticka v. Applebaum (In re*

24  *Applebaum),* 422 B.R. 684, 688 (9th Cir. BAP 2009); *see also,* March, Ahart and Shapiro,

25  *California Practice Guide: Bankruptcy,* ¶¶ 7:2 – 7-3 at 7-1 – 7-2 (2011).  Regardless of

26  which exemption scheme is chosen, California debtors may still exempt certain

27  retirement funds under Section 522(b)(3) of the Bankruptcy Code, 11 U.S.C.  *See* March,

28  Ahart and Shapiro, *California Practice Guide: Bankruptcy,* ¶ 7:660 at 7-72.

Section 522(b)(3) of the Bankruptcy Code, 11 U.S.C., provides, in conjunction with applicable state law, the exemption of: "(C) *retirement funds* to the extent those funds are in a fund or account that is exempt from taxation under section 401, 403, 408, 408A, 414, 457, or 501(a) of the Internal Revenue Code of 1986." 11 U.S.C. § 522(b)(3)(C) (emphasis added). Section 522(b)(4) of the Bankruptcy Code further provides:

> (4) For purposes of paragraph (3)(C) and subsection (d)(12), the following shall apply:
>
> (A) If the retirement funds are in a retirement fund that has received a favorable determination under section 7805 of the Internal Revenue Code of 1986, and that determination is in effect as of the date of the filing of the petition in a case under this title, those funds shall be presumed to be exempt from the estate.
>
> (B) If the retirement funds are in a retirement fund that has not received a favorable determination under such section 7805, those funds are exempt from the estate _if the debtor demonstrates_ that—
>
>> (i) no prior determination to the contrary has been made by a court or the Internal Revenue Service; and
>>
>> (ii) (I) the retirement fund is in substantial compliance with the applicable requirements of the Internal Revenue Code of 1986; or
>>
>> (II) the retirement fund fails to be in substantial compliance with the applicable requirements of the Internal Revenue Code of 1986 and the debtor is not materially responsible for that failure.

11 U.S.C. § 522(b)(4) (emphasis added).

Thus, within the context of 11 U.S.C. § 522(b)(3)(C), there are two separate issues that must be addressed: (1) Debtors must prove that the Inherited IRA has either (a) received a favorable determination under the Internal Revenue Code ("IRC") § 7805, or (b) is in substantial compliance with the applicable requirements of the IRC; and (2) Trustee, as the objecting party, must prove that the funds within the Inherited IRA are

1  "retirement funds" for purposes of § 522(b)(3)(C).  *See Mullen v. Hamlin (In re Hamlin),*

2  465 B.R. 863, 870 (9th Cir. BAP 2012)

3          *a.  Does the Inherited IRA Comply with the IRC?*

4          Neither party has specifically addressed whether there is any evidence that the

5  Inherited IRA (1) has received a favorable determination under Section 7805 of the IRC,

6  or (2) is in substantial compliance with the applicable requirements of the IRC.  *See,*

7  Trustee's MSJ at 16-18; Debtors' MSJ at 14-16; Trustee's Objection to Amended

8  Exemption Claim (Inherited IRA) at 4-9; Debtors' Opposition thereto at 3-8; *see also, In re*

9  *Hamlin,* 465 B.R. at 873-874.

10          While a claim of exemption is presumed valid, and the party objecting to the

11  exemption has the burden of proving that the exemption is not properly claimed by a

12  preponderance of the evidence, 11 U.S.C. § 522(b)(4)(B) places the burden of this

13  specific issue on the debtor.  *See* 11 U.S.C. § 522(b)(4) (requiring "the debtor

14  demonstrate that" (i) the retirement fund has not previously received a favorable

15  determination under Section 7805 of the IRC from the IRS; and (ii) the retirement fund is

16  in substantial compliance with the applicable requirements of the IRC, or if the retirement

17  fund is not in substantial compliance with the applicable requirements of the IRC, then

18  the debtor is not materially responsible for the failure); *see also* Fed. R. Bankr. P. 4003(c)

19  (placing the burden on the objecting creditor to prove that the debtor's exemption was not

20  properly claimed); *Tyner v. Nicholson (In re Nicholson),* 435 B.R. 622, 630 (9th Cir. BAP

21  2010).

22          Here, Debtors have not presented any evidence that the Inherited IRA (i) has

23  received a favorable determination from the IRS under Section 7805 of the IRC; or (ii)

24  otherwise substantially complies with the applicable requirements of the IRC.  Therefore,

25  Debtors have not met their burden of proof under 11 U.S.C. § 522(b)(4), and Debtors'

26  motion for summary judgment cannot be granted without this showing.

27          *///*

28

1

### b. *What Constitutes "Retirement Funds"?*

2          If Debtors eventually prove that the Inherited IRA is eligible for tax exempt status

3    under the IRC, the court will need to address the divided case law as to what constitutes

4    "retirement funds" for purposes of 11 U.S.C. § 522(b)(4) when the debtor has inherited a

5    retirement account from another.  This split is shown by a number of published and

6    unpublished opinions.  *Compare, In re Chilton,* 674 F.3d 486 (5th Cir. 2012) (exempt); *In*

7    *re Hamlin,* 465 B.R. 863 (9th Cir. BAP 2012) (same); *In re Nessa,* 425 B.R. 312 (8th Cir.

8    BAP 2010) (same); *In re Stephenson,* 2011 U.S. Dist. LEXIS 142360, 2011 WL 6152960

9    (E.D. Mich., Dec. 12, 2011) (same); *In re Seeling,* 471 B.R. 320 (D. Mass. 2012) (same);

10   *In re Bauer,* 2013 Bankr. LEXIS 2449, 2013 WL 2661835 (Bankr. D. S.C., June 13, 2013)

11   (same); *In re Kalso,* 2011 Bankr. LEXIS 3098, 2011 WL 3678326 (Bankr. E.D. Mich.,

12   Aug. 19, 2011) (same), *with In re Clark*, 714 F.3d 559 (7th Cir. 2013) (nonexempt).

13          The majority view, which includes the Fifth Circuit and the Bankruptcy Appellate

14   Panels of the Eighth and Ninth Circuits, holds that "retirement funds" for purposes of 11

15   U.S.C. § 523(b)(3)(C) and (12) "can include the funds that others had originally set aside

16   for their retirement, as with inherited IRAs.  *In re Chilton,* 674 F.3d at 488-489; *see also,*

17   *In re Hamlin*, 465 B.R. at 871-873.  The Ninth Circuit Bankruptcy Appellate Panel in

18   *Hamlin* observed that the language of § 522(b) is not expressly limited to the "*debtor's*

19   retirement funds."  465 B.R. at 871, *quoting, In re Nessa*, 426 B.R. at 314.  To read that

20   limitation into § 522(b) "would impermissibly limit the statute beyond its plain language."

21   *Id.*  The BAP in *Hamlin* further noted that the IRC references inherited IRAs in § 408—

22   "Individual retirement accounts"—and gives them the tax exempt status along with

23   traditional IRAs (i.e., those owned by the original IRA owner). *Id.* at 873.  Thus, according

24   to the majority view, distinctions between inherited IRAs and traditional IRAs are

25   irrelevant since IRC § 408(e) provides that "*any* individual retirement account is exempt

26

27

28

1    from taxation under [IRC § 408]" (emphasis added).[4]  *Id., citing,* IRC § 408(e), 26 U.S.C.

2    Accordingly, the majority of the courts hold inherited IRAs are also exempt under the

3    Bankruptcy Code pursuant to § 522(b)(3)(C).  *See, e.g., In re Hamlin*, 465 B.R. at 871-

4    873; *In re Bauer,* 2013 WL 2661835 at *1-2 and n. 2; 11 U.S.C. § 522(b)(3)(C)

5    (exempting "retirement funds to the extent that those funds are in a fund or account that

6    is exempt from taxation under section . . . 408 . . . of the Internal Revenue Code"); *see*

7    *also, In re Chilton,* 674 F.3d at 488-489 (same result for an identical exemption under 11

8    U.S.C. § 522(b)(12); *In re Nessa*, 426 B.R. at 314 (same).

9        The minority view, including the Seventh Circuit, holds that the inquiry of whether

10    an inherited IRA contains "retirement funds" for purposes of the exemption under 11

11    U.S.C. § 522(b)(4) is determined as to the <u>current</u> owner of the funds.  *In re Clark*, 714

12    F.3d 559 (7th Cir. 2013).  The reasoning of the minority view in *Clark* is that the exempt

13    status of "retirement funds" status should be determined by whether the inherited IRA

14    represents anyone's savings for retirement.  The Seventh Circuit in *Clark* noted the IRC's

15    disparate treatment between IRAs inherited by a spouse and IRAs inherited by a non-

16    spouse.  *Id.* at 560-561.  That is, if a spouse inherited the IRA, then the funds remain

17    "retirement funds" because the spouse cannot withdraw any of the money before age

18    59 ½ without paying a penalty tax and must start withdrawals no later than the year in

19    which the survivor reaches age 70 ½.  *Id.*  In other words, the IRA remains for the

20    spouse's retirement.  *Id.*  In contrast, if the IRA is inherited by a non-spouse, then the

21    funds are <u>not</u> "retirement funds" because the IRA becomes merely a "time-limited tax

22    deferral vehicle" from which the non-spouse beneficiary must make mandatory

23    distributions that are entirely unrelated to the non-spouse's retirement.  *Id.* at 560.  Since

24    the IRA is not for the non-spouse's retirement or anyone else's retirement (as the original

25

---

26    [4] This is true, unless the account has ceased to be an IRA by reasons of paragraph (2) or (3), which
includes the employee engaging in certain prohibited transactions and borrowing from an annuity contract.
27    *In re Hamlin,* 465 B.R. at 873 and n. 12, *citing,* IRC § 408(e)(2) and (3), 26 U.S.C.  Neither of those
circumstances has been alleged here by Trustee.

28

1   owner is deceased), according to the minority view, the Seventh Circuit concluded that

2   funds in an IRA inherited by a non-spouse are not "retirement funds" for purposes of

3   § 522(b).  *Id.*

4          As between the two approaches, the minority view espoused by the Seventh

5   Circuit has much to commend itself as that approach may better serve the function of the

6   exemption limiting it to those who actually saved the funds for retirement.  However, this

7   restrictive approach entirely relies upon a court's interpretation of the term "retirement

8   funds" rather than the express language of the statute.  That is, the minority interpretation

9   of the statutory language is not based on the plain language of the statute, but appears to

10  be based on the court's own policy considerations.  This approach is a general departure

11  from the usual method of statutory interpretation based on the plain language of the

12  statute as discussed above.  *United States v. Ron Pair Enterprises, Inc.,* 489 U.S. at 241-

13  242, *cited in, In re Nessa,* 426 B.R. at 314 (interpreting parallel provision in 11 U.S.C.

14  § 522(b)(12)).  As noted above, in *Ron Pair,* the Supreme Court stated, "The task of

15  resolving the dispute over the meaning of [a statute] begins where all such inquiries must

16  begin: with the language of the statute itself."  *Id.* at 241 (citation omitted).  The Supreme

17  Court in *Ron Pair,* in interpreting the subject statute in that case, Section 506(b) of the

18  Bankruptcy Code, 11 U.S.C., stated, "In this case it is also where the inquiry should end,

19  for where, as here, the statute's language is plain, the sole function of the courts is to

20  enforce it according to its terms."  *Id.* (citation and internal quotation marks omitted).

21  Moreover, as the Supreme Court further stated in *Ron Pair,* "[t]he plain meaning of

22  legislation should be conclusive, except in the rare cases [in which] the literal application

23  of a statute will produce a result demonstrably at odds with the intentions of its

24  drafters . . . .  In such cases, the intention of the drafters, rather than the strict language,

25  controls."  *Id.* at 242 (citation omitted).  However, as the Supreme Court also stated in

26  *Ron Pair,* "as long as the statutory scheme is coherent and consistent, there generally is

27  no need for a court to inquire beyond the plain language of the statute."  *Id.* at 240-241.

28

21

1        As the Fifth Circuit in *Chilton* stated, the analysis should be begin with "whether

2   the funds in an inherited IRA are 'retirement funds' as that phrase is used" in the statute.

3   674 F.3d at 488 (interpreting 11 U.S.C. § 522(d)(12), which has identical language to 11

4   U.S.C. § 522(b)(3)(C)); *see also, In re Bauer,* 2013 WL 2661835 at *1 n. 2 (explaining

5   that 11 U.S.C. §§ 522(b)(3)(C) and (12) are identical exemptions, one for the so-called

6   "opt out" states and the other for the remaining states).  As further noted in *Chilton,* "[t]he

7   phrase 'retirement funds' is not defined in the Bankruptcy Code."  *Id.*  Thus, "[t]o interpret

8   statutory language," according to the Fifth Circuit in *Chilton,* "we must begin with its plain

9   meaning."  *Id., citing, Connecticut National Bank v. Germain,* 503 U.S. 249, 253-254

10  (1992).  As noted in *Chilton,* "'[R]etirement' is defined as 'withdrawal from office, active

11  service, or business'; 'fund' is defined as 'a sum of money or other resources the principal

12  or interest of which is set apart for a specific objective or activity.'"  674 F.3d at 489,

13  *citing, Webster's Third New International Dictionary* at 921, 1939 (1993).

14       In analyzing the plain meaning of the phrase "retirement funds," the Fifth Circuit in

15  *Chilton* stated:

16      . . . The plain meaning of the statutory language refers to money that was
    "set apart" for retirement.  Thus, the defining characteristic of "retirement

17  funds" is the purpose they are "set apart" for, not what happens after they
    are "set apart."  Here, there is no question that the funds contained in

18  debtors' inherited IRA were "set apart" for retirement at the time [the
    decedent] deposited them into an IRA.  This reasoning finds further

19  support from 11 U.S.C. § 522(b)(4)(C), which provides that "a direct
    transfer of retirement funds from 1 fund or account that is exempt from

20  taxation   under section . . . 408 . . . of the Internal Revenue Code of
    1986, . . . shall not cease to qualify for exemption under [paragraph (3)(C)

21  and] . . . subsection (d)(12) by reason of such direct transfer."  In other
    words, the direct transfer of "retirement funds" does not alter their status

22  as "retirement funds."  As we see no reason to interpret the statutory
    language differently from its plain meaning, we hold that the $170,000

23  contained in the inherited IRA constitute "retirement funds" as that phrase
    is used in section 522(d)(12).

24
    674 F.3d at 489.  This court concludes that the same rationale applies to the identical

25  exemption set forth in 11 U.S.C. § 522(b)(3)(C).  *In re Bauer,* 2013 WL 2661835 at *1-2

26  and n. 2; *see also, In re Hamlin,* 465 B.R. at 870-873.

27

28

1    Thus, the majority of the courts which have opined on the issue have held that the

2    plain language of the statute controls and that the statute does not contain any restriction

3    of the exemption to the original owners of the funds.  *See, e.g., In re Chilton,* 674 F.3d at

4    488-489, *citing, Connecticut National Bank v. Germain,* 503 U.S. at 253-254; *In re*

5    *Hamlin,* 465 B.R. at 871, *citing, Patterson v. Shumate,* 504 U.S. at 757; *In re Nessa,* 426

6    B.R. at 314-315, *citing, United States v. Ron Pair Enterprises,* 489 U.S. at 241.  The court

7    agrees with the majority view that this is not a situation that the literal application of the

8    statute will defeat the intent of the drafters.  *Id.*  If Congress intended to limit

9    § 522(b)(3)(C) to the "*debtor's* retirement funds," it certainly knew how to do so.  *Id.; see*

10   *also, e.g.*, 11 U.S.C. § 522(b)(3)(B) (exempting "any interest in property <u>in which the</u>

11   <u>debtor had</u>, immediately before the commencement of the case, an interest as a tenant

12   by the entirety or joint tenant to the extent that such interest as a tenant by the entirety or

13   joint tenant is exempt from process under applicable nonbankruptcy law" (emphasis

14   added)).

15   The court therefore concludes that the funds of the Inherited IRA in the hands of

16   Berry, who along with her brothers are not the original owners of the funds, may be

17   considered retirement funds qualifying for exempt status based on the plain language of

18   11 U.S.C. § 522(b)(3).  Thus, Trustee's motion for summary judgment that such funds in

19   Berry's hands may never be considered exempt should be denied.  However, the court

20   cannot grant Debtors' cross-motion for summary judgment because they have not yet

21   established that the funds are tax exempt under the IRC to qualify as exempt funds under

22   11 U.S.C. 522(b)(3).

23   2.   California Code of Civil Procedure § 703.140(b)(10)(E)

24   California Code of Civil Procedure, § 703.140(b)(10)(E) provides that a bankrupt

25   debtor may exempt:

26   (10) The debtor's right to receive any of the following:

27   (E)  A  payment  under  a  stock  bonus,  pension,  profit-sharing,
     annuity, or similar plan or contract on account of illness, disability,
28

death, age, or length of service, to the extent reasonably necessary for the support of the debtor and any dependent of the debtor, unless all of the following apply:

(i)      That plan or contract was established by or under the auspices of an insider that employed the debtor at the time the debtor's rights under the plan or contract arose.

(ii)     The payment is on account of age or length of service.

(iii)    That plan or contract does not qualify under Section 401(a), 403(a), 403(b), 408, or 408A of the Internal Revenue Code of 1986. (Emphasis added).

California Code of Civil Procedure, § 703.140(b)(10)(E).

The Ninth Circuit held that Section 703.140(b)(10)(E) covers IRAs in general.  *In re McKown*, 203 F.3d 1188, 1190 (9th Cir. 2000) (holding that an IRA is a "similar plan or contract" for purposes of Section 703.140(b)(10)(E)).  The Supreme Court reached a similar conclusion when interpreting materially identical language in the federal exemption, 11 U.S.C. § 522(d)(10)(E).  *Rousey v. Jacoway*, 544 U.S. 320, 326-29 (2005) (holding that an IRA is a "similar plan or contract on account of . . . age" for purposes of 11 U.S.C. § 522(d)(10)(E)).

However, with respect to an inherited IRA, a growing trend of courts from other jurisdictions interpreting similar language has held that an inherited IRA is not exempt because it is not on account of a debtor's age for the following reasons: (i) an inherited IRA requires immediate distributions unrelated to the debtor's age; (ii) the beneficiary may make no contributions to the account; (iii) the beneficiary may not roll the funds over into another retirement plan; and (iv) none of the other factors (illness, disability, death, length or service) apply to inherited IRAs.  Thus, because an inherited IRA is not on account of a debtor's age (or any other listed factor), inherited IRAs are not exempt from the debtor's bankruptcy estate under 11 U.S.C. § 522(D)(10)(e).  *In re Kirchen*, 344 B.R. 908 (Bankr. E.D. Wis. 2006); *In re Taylor*, 2006 WL 1275400 (Bankr. C.D. Ill. 2006); *In re Navarre*, 332 B.R. 24 (Bankr. M.D. Ala. 2004); *In re Sims*, 241 B.R. 467 (Bankr. N.D. Okla. 1999); *see also, In re Jarobe*, 365 B.R. 717, 721 (Bankr. S.D. Tex., 2007) (noting

1  the trend).  Furthermore, at least one bankruptcy court has held that an inherited IRA was

2  not exempt under California Code of Civil Procedure, § 703.140(b)(10)(E), if the funds

3  therein were not being used for the debtor's "retirement needs."  *In re Greenfield*, 289

4  B.R. 146, 150 (Bankr. S.D. Cal. 2003).

5      After review of the applicable law, this court agrees with the logic of the above-

6  described trend in the case law and holds that an inherited IRA is not exempt under

7  California Code of Civil Procedure, § 703.140(b)(10)(E) because it is not a "similar plan or

8  contract on account of illness, disability, death, age, or length of service."  Therefore,

9  Trustee's objection to Debtors' claimed exemption of Berry's interest in the Inherited IRA

10  pursuant to California Code of Civil Procedure § 703.140(b)(10)(E) is sustained.

**CONCLUSION**

11      For the foregoing reasons, the court rules as follows:

12  1.  Trustee's motion for summary judgment is denied in its entirety (AP Docket No. 9).

15  2.  Debtors' cross-motion for summary judgment is granted in part and denied in part as follows (AP Docket No. 19).

17    a.  With respect to Berry's interest in the Trust, summary judgment is granted because there is no genuine issue of material fact that the Trust is not property of the bankruptcy estate subject to the claims of creditors based on the spendthrift provision of the Trust pursuant to 11 U.S.C. § 541(c)(2), and Debtors are entitled to judgment as a matter of law.

22    b.  With respect to Berry's interest in the Inherited IRA, summary judgment is denied as follows:

24      i.  Denied as to the amended claim of exemption pursuant to 11 U.S.C. § 522(b)(3)(C) and (4), because there is a genuine issue of material fact as to whether the Inherited IRA is eligible for tax exempt status under the IRC; however, the court grants summary

1    adjudication of the issue that inherited IRAs are eligible for

2    exemption under 11 U.S.C. § 522(b)(3)(C) and (4);

3        ii.    Denied as to the amended claim of exemption pursuant to

4        California Code of Civil Procedure, § 703.140(b)(10)(E), because

5        Debtors are not entitled to judgment as a matter of law because

6        inherited IRAs are not eligible for exemption under that statute.

7    3.  Trustee's objection to Debtors' amended claim of exemption in the Trust

8        pursuant to California Code of Civil Procedure, § 703.140(b)(5), is overruled as

9        moot because the court holds that Berry's interest in the Trust is not property of

10        the estate (BK Docket No. 33).

11    4.  Trustee's objection to Debtors' amended claim of exemption in the Inherited

12        IRA pursuant to 11 U.S.C. § 522(b)(3)(C) and (4) is overruled, but is sustained

13        as to Debtors' amended claim of exemption in the Inherited IRA pursuant to

14        California Code of Civil Procedure, § 703.140(b)(10)(E) (BK Docket No. 37).

15    5.  Further proceedings will have to be scheduled in the main bankruptcy case

16        regarding Trustee's objection to the amended claim of exemption as to Berry's

17        interest in the Inherited IRA pursuant to 11 U.S.C. § 522(b)(3)(C) and (4).

18    A separate order consistent with this memorandum decision will be issued

19  concurrently herewith.

20    IT IS SO ORDERED

21                        ###

22

23

24  Date: August 29, 2013    _____

25                        Robert Kwan
                          United States Bankruptcy Judge

26

27

28

# NOTICE OF ENTERED ORDER AND SERVICE LIST

Notice is given by the court that a judgment or order entitled (*specify*) **MEMORANDUM DECISION ON CROSS-MOTIONS FOR SUMMARY JUDGMENT IN ADVERSARY PROCEEDING AND ON TRUSTEE'S OBJECTION TO DEBTORS' CLAIM OF EXEMPTION IN MAIN BANKRUPTCY CASE** was entered on the date indicated as "Entered" on the first page of this judgment or order and will be served in the manner indicated below:

**I. SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s), the foregoing document was served on the following person(s) by the court via NEF and hyperlink to the judgment or order. As of **August 28, 2013**, the following person(s) are currently on the Electronic Mail Notice List for this bankruptcy case or adversary proceeding to receive NEF transmission at the email address(es) indicated below:

- Richard K Diamond (TR)    jlv@dgdk.com,
     rdiamond@ecf.epiqsystems.com;DanningGill@Gmail.com
- United States Trustee (LA)    ustpregion16.la.ecf@usdoj.gov
- Mark T Young    myoung@donahoeyoung.com

**II. SERVED BY THE COURT VIA U.S. MAIL:** A copy of this notice and a true copy of this judgment or order was sent by U.S. Mail, first class, postage prepaid, to the following person(s) and/or entity(ies) at the address(es) indicated below:

Kevin Meek
Danning Gill Diamond and Kollitz
1900 Ave of the Stars 11th Fl
Los Angeles, CA 90067

Jeffrey Scott Trawick
24943 Greensbrier Drive
Stevenson Ranch, CA 91381

Stephanie F Berry
24943 Greensbrier Drive
Stevenson Ranch, CA 91381

**III. TO BE SERVED BY THE LODGING PARTY**: Within 72 hours after receipt of a copy of this judgment or order which bears an "Entered" stamp, the party lodging the judgment or order will serve a complete copy bearing an "Entered" stamp by U.S. Mail, overnight mail, facsimile transmission or email and file a proof of service of the entered order on the following person(s) and/or entity(ies) at the address(es), facsimile transmission number(s) and/or email address(es) indicated below: